IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| LC INVESTMENTS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:20-cv-02514-TLP-atc |
| v. | ) | |
| | ) | |
| BRYAN FORD, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND GRANTING
MOTION TO STAY AND COMPEL ARBITRATION**

Defendant Bryan Ford moves to dismiss Plaintiff's claims and compel arbitration under Federal Rule of Civil Procedure 12(b)(1), 12(b)(3), 12(b)(6), or 56. (ECF No. 8.) Plaintiff responded in opposition (ECF No. 13), Defendant replied (ECF No. 14), and Plaintiff then filed a sur-reply. (ECF No. 18.) As explained below, the Court finds that the parties agreed to arbitrate Plaintiff's claims. And so the Court **GRANTS** Defendant's motion to stay and compel arbitration.

**BACKGROUND**

This is a breach of contract action. Copia Partners, LLC ("Copia") borrowed one million dollars from Pinnacle Bank ("Pinnacle"). (ECF No. 1 at PageID 2.) At the same time, in consideration for the credit Pinnacle extended to Copia, Defendant executed a personal guaranty agreeing to repay the funds owed by Copia to "Pinnacle Bank, or its successors, endorsees, transferees, and assigns." (ECF No. 1-5 at PageID 54.) What is more, a provision in the Guaranty states that "[t]his Guaranty is assignable by Bank, and any assignment hereof or any

transfer or assignment of any instrument evidence or securing the Indebtedness will operate to vest in such assignee all rights and powers of Bank under this Guaranty." (*Id.* at PageID 55.) Meanwhile, Pinnacle assigned its rights to X Capital, LLC who then assigned them to Plaintiff. (ECF No. 1 at PageID 3; *see* ECF No. 1-6.) That loan to Copia is now allegedly in default. (*Id.* at PageID 3.) And Plaintiff now seeks to recover from Defendant under the guaranty. (*Id.*)

Many documents evidence the loan between Copia and Pinnacle.[1] (*Id.* at PageID 2.) Those documents include a Line of Credit Promissory Note ("Promissory Note") (ECF No. 1-1), Loan Agreement (ECF No. 1-2), Security Agreement (ECF No. 1-3), and UCC-1 Financing Statement ("Financing Statement") (ECF No. 1-4). (*Id.*) The Loan Agreement between Copia and Pinnacle sets forth "the full terms and conditions of the Loan." (ECF No. 1-2 at PageID 13.) And it contains an arbitration clause. It reads:

> **ARBITRATION.** ANY CONTROVERSY OR CLAIM BETWEEN OR AMONG THE PARTIES HERETO INCLUDING BUT NOT LIMITED TO THOSE ARISING OUT OF OR RELATING TO THIS, INSTRUMENT, AGREEMENT OR DOCUMENT OR ANY RELATED INSTRUMENTS, AGREEMENTS OR DOCUMENTS, INCLUDING ANY CLAIM BASED ON OR ARISING FROM AN ALLEGED TORT, SHALL BE DETERMINED BY BINDING ARBITRATION IN ACCORDANCE WITH THE FEDERAL ARBITRATION ACT . . . . ANY PARTY TO THIS AGREEMENT MAY BRING AN ACTION, INCLUDING A SUMMARY OR EXPEDITED PROCEEDING, TO COMPEL ARBITRATION OF ANY CONTROVERSY OR CLAIM TO WHICH THIS AGREEMENT APPLIES IN ANY COURT HAVING JURISDICTION OVER SUCH ACTION.

(*Id.* at PageID 31.) The parties disagree about whether the arbitration clause applies here.

---

[1] Plaintiff takes seemingly contradictory positions on this point. First, Plaintiff's complaint alleges that "[t]he loan is evidenced by" the Promissory Note, Loan Agreement, Security Agreement, and UCC-1 Financing Statement. (ECF No. 1 at PageID 2.) Yet Plaintiff's sur-reply then argues that the Loan Agreement does not "evidence(s)" the indebtedness here. (ECF No. 18 at PageID 134.)

As mentioned above, Defendant Bryan Ford executed an Unlimited Guaranty Agreement ("Guaranty") in support of the credit Pinnacle extended to Copia. (ECF No. 1 at PageID 2; *see* ECF No. 1-5.) There, Defendant "absolutely and unconditionally guaranteed the full and prompt payment and performance to Pinnacle Bank of all indebtedness, obligations, and liabilities owed by Copia to the holder of the debt." (ECF No. 1 at PageID 2.) The Guaranty also has an incorporation by reference clause.

> Incorporation by reference. Guarantor agrees that the terms, conditions, agreements and stipulations in all instruments evidencing or securing the Indebtedness, now or hereafter executed, are or will become part of this Guaranty and are hereby ratified, adopted, and confirmed.

(ECF No. 1-5 at PageID 55.) Only Defendant signed the Guaranty. (*Id.* at PageID 57.)

Later, Pinnacle assigned and transferred its rights in the Promissory Note and "all associated loan documents including, without limitation, the Security Agreement, the Loan Agreement, and the Unlimited Guarantee (*sic*) Agreements…" to X Capital, LLC, who then assigned them to Plaintiff. (ECF No. 1 at PageID 3; *see* ECF No. 1-6.) Copia allegedly defaulted on the loan. (*Id.* at PageID 3.) As a result, Plaintiff claims it is a secured party who can enforce the loan documents, including the Guaranty. (*Id.*) Plaintiff demanded payment from Defendant, but he has not paid. (*Id.* at PageID 4.) Relying on the Guaranty, Plaintiff then sued Defendant arguing that Defendant is liable for the outstanding amount of the loan and that his failure to pay is a breach of contract. (*Id.* at PageID 3–4.)

Defendant now moves to either (1) compel arbitration and dismiss Plaintiffs' complaint under Federal Rules of Civil Procedure 12(b)(1), 12(b)(3), 12(b)(6), or 56; or, in the alternative, (2) compel arbitration and stay this action.[2] (ECF No. 8 at PageID 74.) He argues that the Loan

---

[2] For the reasons noted below, the Court finds that the best course here is to stay, instead of dismissing, the action.

3

Agreement's arbitration clause governs Plaintiff's claims here.  (*Id.*)  Next, the Court turns to the legal standards for Defendant's motion.

## ANALYSIS

**I.      Legal Standards**

    **A.      The Federal Arbitration Act**

The arbitration provision of the Loan Agreement says the Federal Arbitration Act (FAA) applies.  (ECF No. 1-2 at PageID at 31.)  Congress enacted the FAA "to overcome judicial resistance to arbitration."  *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006).  The FAA provides a way for one to petition a court to compel arbitration under a contract.  *See* 9 U.S.C. § 4.  Before compelling arbitration, courts first determine whether the parties agreed to arbitrate.  *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).  Next, courts decide the scope of that agreement.  *Id*.  Finally, the court must decide whether to stay the remainder of the case if not all the claims are referred to arbitration.  *Id*.

> Section 2 of the FAA reflects the Act's breadth.  Under this section,
>
> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.  The Supreme Court has interpreted this provision as "reflecting both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotations and citations omitted).  So courts place arbitration agreements on "equal footing with other contracts."  *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010).  This "ensure[s] that private arbitration agreements are enforced according to their terms."  *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 469 (1989).

And the FAA is a body of federal substantive law that preempts state laws. *Southland Corp. v. Keating*, 465 U.S. 1, 12–13 (1984). But despite the FAA's broad reach, a plaintiff can challenge an arbitration agreement under the savings clause in § 2. Under the savings clause, a party can invalidate an arbitration agreement "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A party, therefore, can challenge the validity, enforceability, or formation of an arbitration agreement.

That said, whether an arbitration agreement exists is a question for the court, not the arbitrator. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) ("[T]he court determines whether a valid arbitration agreement exists"); *Granite Rock Co. v. Int'l Broth. of Teamsters*, 561 U.S. 287, 297 (2010); *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 547 (1964); s*ee also* 9 U.S.C. § 3 (directing court to stay case and refer issue to arbitration "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement"). "[N]o matter how strong the federal policy favors arbitration, 'arbitration is a matter of contract between the parties, and one cannot be required to submit to arbitration a dispute which it has not agreed to submit to arbitration.'" *Simon v. Pfizer Inc.*, 398 F.3d 765, 775 (6th Cir. 2005) (quoting *United Steelworkers, Loc. No. 1617 v. Gen. Fireproofing Co*., 464 F.3d 726, 729 (6th Cir. 1972)). Courts therefore decide whether the parties agreed to arbitrate.

When deciding whether the parties agreed to arbitrate, courts apply "ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc., v. Kaplan*, 514 U.S. 938, 944 (1995). Thus, the Court "must apply the law of the forum state, Tennessee, in interpreting the parties' contract and its provisions." *Glob. Aerospace, Inc. v. Phillips & Jordan, Inc.*, No. 3:15-CV-105-PLR-CCS, 2015 WL 5514627, at *2 (E.D. Tenn. Sept. 17, 2015).

### B.     Burden of Proof on a Motion to Compel Arbitration

Courts in the Sixth Circuit treat motions to compel arbitration like motions for summary judgment. *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). The court views all facts and inferences in the light most favorable to the nonmoving party. *Id.* The movant "bears the ultimate burden of establishing the existence of a valid agreement to arbitrate," and must present "some evidence" that the parties agreed to arbitrate. *Hammond v. Floor & Decor Outlets of Am., Inc.*, No. 3:19-cv-01099, 2020 WL 2473717, at *3 (M.D. Tenn. May 13, 2020); *Foust v. Comcast Corp.*, No. 3:19-CV-173-HSM-DCP, 2020 WL 1891755, at *4 (E.D. Tenn. Jan. 28, 2020). Once the movant makes a prima facie showing of the agreement's existence, the party opposing arbitration "must show a genuine issue of material fact as to the validity of the agreement to arbitrate." *Great Earth Cos., Inc.*, 288 F.3d at 889.

## II.    Analysis of Plaintiff's Claims

The central issue here is whether Defendant—who did not sign the Loan Agreement—can enforce its arbitration clause. The Court finds that, because the Guaranty incorporated the Loan Agreement and the Security Agreement by reference, Defendant can enforce the arbitration clause here.

### A.     Incorporation by Reference

#### i.     The Guaranty Incorporated the Loan Agreement

In Tennessee, "the general rule is that an individual who is not a party to a contract cannot sue for its breach." *Smith v. Chattanooga Med. Invs., Inc.*, 62 S.W.3d 178, 185 (Tenn. Ct. App. 2001). But "a litigant who was not a party to the relevant arbitration agreement may invoke § 3 [of the FAA] if the relevant state contract law allows him to enforce the agreement." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009). And under Tennessee law, there are

some circumstances where a nonsignatory to an agreement can still enforce it. *Blue Water Bay at Ctr. Hill, LLC v. Hasty*, No. M2016-02382-COA-R3-CV, 2017 WL 5665410, at *8 (Tenn. Ct. App. Nov. 27, 2017); *see also Harvey v. Cumberland Tr. & Inv. Co.*, 532 S.W.3d 243, 265 (Tenn. 2017).

Though "there are not many Tennessee state court decisions specifically explicating the panoply of circumstances in which a nonsignatory can compel arbitration or be compelled to arbitrate a dispute, it is clear that the issue is dependent on the application of ordinary common law principles." *Blue Water Bay*, 2017 WL 5665410, at *8; *Foust v. Comcast Corp.*, No. 3:19-CV-173-HSM-DCP, 2020 WL 1891755, at *5 (E.D. Tenn. Jan. 28, 2020). As one Tennessee court explained, "[t]he federal courts have recognized at least five doctrines justifying the application of an arbitration provision to a nonsignatory: (1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; and (5) estoppel." *Blue Water Bay*, 2017 WL 5665410, at *8 (citing *Doe #1 v. Déjà Vu Consulting Inc.*, No. 3:17-cv-00040, 2017 WL 3837730, at *15 (M.D. Tenn. Sept. 1, 2017)); *see also Carlisle*, 566 U.S. at 631 (2009) ("'[T]raditional principles' of state law allow a contract to be enforced by or against nonparties to the contract through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waivers, and estoppel[.]'" (quoting 21 R. Lord, Williston on Contracts § 57:19, p. 183 (4th ed. 2001))).

Tennessee courts have also found that these doctrines may allow a nonsignatory to enforce an arbitration agreement against a signatory. *See id.*; *Mid-S. Maint. Inc. v. Paychex Inc.*, No. W2014-02329-COA-R3-CV, 2015 WL 4880855, at *21 (Tenn. Ct. App. Aug. 14, 2015) (finding a non-signatory can compel a signatory to arbitrate under estoppel doctrine); *Robert J. Denley Co., Inc. v. Neal Smith Constr. Co.*, No. W2006-00629-COA-R3-CV, 2007 WL 1153121,

7

at *5–6 (Tenn. Ct. App. App. 19, 2007) (finding a non-signatory can compel arbitration under incorporation by reference doctrine).

Defendant argues that the "incorporation by reference" doctrine applies here. When a document is incorporated by reference into a contract, it is generally "considered as part of the agreement of the parties." *Wofford v. M.J. Edwards & Sons Funeral Home Inc.*, 490 S.W.3d 800, 811 (Tenn. Ct. App. 2015). And so, "a writing may be incorporated by reference into a written contract, thereby requiring both writings to be construed together." *Staubach Retail Servs.-Se., LLC v. H.G. Hill Realty Co.*, 160 S.W.3d 521, 525 (Tenn. 2005).

The Guaranty here contains an incorporation by reference clause. It states, "Guarantor agrees that the terms, conditions, agreements and stipulations in all instruments evidencing or securing the Indebtedness, now or hereafter executed, are or will become part of this Guaranty and are hereby ratified, adopted, and confirmed." (ECF No. 1-5 at PageID 55.) Defendant argues that, "[b]y including the incorporation by reference clause in the Guaranty, there is no question that Ford and LCI's predecessor intended the Guaranty to contain the arbitration clause found in the Loan Agreement." (ECF No. 14 at PageID 113.) Plaintiff disagrees, however.

Plaintiff argues that the Guaranty did not incorporate the Loan Agreement and its arbitration clause. (ECF No. 18 at PageID 134.) Under the incorporation by reference clause, the Guaranty incorporates the terms of "all instruments evidencing or securing the Indebtedness." (ECF No. 1-5 at PageID 55.) But Plaintiff claims that the Loan Agreement does not "evidence" or "secure" any indebtedness. (ECF No. 18 at PageID 134.) It argues that, though the Loan Agreement defines the line of credit and the terms and conditions of the indebtedness, the Agreement itself does not "evidence" the loan. (*Id.*) Plaintiff emphasizes that Section 2(A)(i) of the Loan Agreement says that "[t]he indebtedness of Borrower to Bank in

connection with the Line of Credit shall be evidenced by, and payable in accordance with the terms of, the Revolving Note." (ECF No. 1-2 at PageID 16–17.) And so it argues that the Promissory Note alone, not the Loan Agreement, evidences the indebtedness. (*Id.*)

Plaintiff similarly argues that the Loan Agreement does not "secure" the indebtedness either. (ECF No. 18 at PageID 135.) Plaintiff acknowledges that the Loan Agreement "does state a security interest will be granted." (*Id.*) Even so, Plaintiff argues that, "without a Security Agreement and a properly filed UCC-1, the language in Section 4 would be merely prefatory."[3] (*Id.*)

The Court finds that the Guaranty incorporates the Loan Agreement and its arbitration clause by reference here. First, Plaintiff's complaint alleges that "[t]he loan is evidenced by" the Loan Agreement. (*See* ECF No. 1 at PageID 2.) And because it has not amended the Complaint to change this allegation, Plaintiff is perhaps stuck with this position. *See Wiggins v. Ocwen Servicing, LLC*, No. 15-14238, 2017 WL 476384, at *5 (E.D. Mich. Feb. 6, 2017) ("[Plaintiff's] response brief attempts to sidestep these timing problems by telling an entirely different narrative from her Complaint," but "the Court will not consider this line of argument, as it is inconsistent with the Complaint, and [Plaintiff] has not asked to amend her complaint."); *see also Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012) ("It is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss").

What is more, Plaintiff does not raise this argument until its sur-reply. (*See* ECF No. 18.) This might be too late. "An argument raised for the first time in a reply brief is considered waived." *Select Specialty Hosp.-Memphis, Inc. v. Trs. of Langston Cos., Inc.*, No. 2:19-cv-2654-

---

[3] Plaintiff uses little case law to support its arguments that the Loan Agreement does not evidence or secure the loan. (*See* ECF No. 28 at PageID 134.)

9

JPM-tmp, 2020 WL 4275264, at *9 (W.D. Tenn. July 24, 2020) (citing *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2006)); *Sims v. Piper*, No. 07-14380, 2008 WL 3318746, at *5 (E.D. Mich. Aug. 8, 2008) (finding that issues raised for the first time in a reply brief on a motion to dismiss "are not properly before this Court").

And here, neither Plaintiff nor Defendant argued in their initial briefings that the Loan Agreement did not evidence the loan. The Court, however, views the briefings in the light most favorable to Plaintiff, and finds that Plaintiff's argument responds to those raised in Defendant's motion. As a result, the Court considers Plaintiff's argument that the Loan Agreement does not evidence or secure the loan. And yet, the Court finds that the argument fails.

This is because the Loan Agreement secures the debt. Take Section 4 of the Loan Agreement which explicitly grants the bank a security interest. The provision reads,

> **Grant of Security Interest.** Borrower hereby grants to Bank a security interest in and to all of Borrower's personal property including, without limitation, all Receivables, Inventory, Equipment and General Intangibles of Borrower, whether now in existence or owned or hereafter acquired, entered into, created or arising, and wherever located, together with all proceeds and products thereof and all accessories thereto, and all books, records, files and all other data and documents of all kinds relating thereto, in whatever form, whether computerized or otherwise and including but not limited to, computer disks and tapes relating to all of the foregoing.

(ECF No. 1-2 at PageID 18.) It continues to list the secured obligations, stating that "the security interests hereinabove described shall secure" certain obligations, including full payment of the indebtedness. (*Id.*)

Plaintiff argues that the parties intended Section 4 "merely to delineate the parameters of the security agreement that was to be contemporaneously executed." (ECF No. 18 at PageID 135.) But this reading goes against Section 4's plain text. *See Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tenn., Inc.*, 556 S.W.3d at 687–94 (discussing history of

Tennessee contract interpretation and finding that Tennessee courts look at both the text and context of the contract). Section 4 says that the Borrower "grants" the Bank a security interest. (ECF No. 1-2 at PageID 18.) It also creates a security interest in "all of Borrower's personal property including, without limitation, all Receivables, Inventory, Equipment, and General Intangibles of the Borrower . . . ." (*See* ECF No. 1-2 at PageID 18.) Considering this language, the Court finds that the Loan Agreement secures the loan.

The language granting the security interest is in the present tense, not the future tense. This suggests that the parties intended the Loan Agreement itself to secure the indebtedness. Just because there is also a separate Security Agreement between the parties does not mean that the Loan Agreement cannot secure the indebtedness too. With that in mind, the Court finds that the Loan Agreement secures the parties' indebtedness.

But that is not all. Even if the Loan Agreement does not secure the debt, the parties agree that the Security Agreement does. (*See* ECF No. 18 at PageID 135 & ECF No 1-3, PageID 39- 49.) In fact, the parties agree that the Security Agreement both evidences and secures the indebtedness here. (*Id.*) Because the Guaranty incorporates "all instruments evidencing or securing the Indebtedness," it also incorporates the Security Agreement by reference. (*See* ECF No 1-5, PageID 55.) In like manner, the Security Agreement explicitly incorporates the Loan Agreement by reference.[4] (ECF No. 1-3 at PageID 39.) And so because the Security Agreement incorporates the Loan Agreement, the Guaranty incorporates the terms of both agreements. *See*

---

[4] The Security Agreement states: "Reference is made to that certain Loan Agreement (the "Loan Agreement") of even date herewith between the Borrower and the Bank, said Loan Agreement being incorporated herein by reference. All terms used in this Agreement which are defined in the Loan Agreement or in the Uniform Commercial Code of the State of Tennessee (the "Code") and which are not otherwise defined herein shall have the same meanings herein as set for therein." (ECF No. 1-3 at PageID 39.)

11

*Exch. Mut. Ins. Co. v. Haskell Co.*, 742 F.2d 274, 276 (6th Cir. 1984); *see also Tipton Cty. Dep't of Pub. Instruction v. Delashmit Elec. Co.*, No. 02A01-9704-CH-00084, 1998 WL 158774, at *3 (Tenn. Ct. App. Apr. 7, 1998). This includes the arbitration provision of course.

In *Exchange Mutual Insurance Co. v. Haskell Co.*, a general contract contained an arbitration clause but the performance bond did not. *Id.* The Sixth Circuit found that, because the performance bond incorporated a subcontract by reference, and the subcontract incorporated the general contract by reference, the general contract's arbitration clause applied to the parties to the performance bond. *Id.* So too with the agreements here. The Guaranty incorporates the Security Agreement, which incorporates the Loan Agreement and its arbitration clause. For that reason, the arbitration clause is part of the Guaranty.

The Court now considers whether the arbitration clause applies to Defendant.

### ii. The Incorporated Arbitration Clause Applies to Defendant

The Court finds that the incorporated arbitration clause applies to Defendant. Plaintiff argues that, under the Loan Agreement's plain language, Pinnacle only agreed to arbitrate disputes "between or among the parties hereto." (ECF No. 13 at PageID 106; *see* ECF No. 1-2 at PageID 31.) According to Plaintiff, the "standard legal meaning" of "hereto" is "attached to this document."[5] (ECF No. 13 at PageID 106.) And so, it argues that, because the only parties "attached to" the Loan Agreement were Pinnacle and Copia, the arbitration clause does not apply to Defendant. (*Id.*)

---

[5] There is little case law interpreting this language. In fact, the parties only cite to Black's Law Dictionary and a California district court case for this argument. *See Hereto*, Black's Law Dictionary (10th ed. 2014); *Vogel v. Vogel*, No. CV-14-0033 DSF (JEMx), 2014 WL 12575815, at *3 (C.D. Cal. June 23, 2014).

12

But when an agreement incorporates another document by reference, the language in the second document becomes "part of the agreement of the parties." *Wofford*, 490 S.W.3d at 811. This means that the arbitration clause's language requiring arbitration of claims "between or among the parties hereto" now includes the parties to the Guaranty.

Tennessee case law provides guidance on this point. In *McCall v. Towne Square, Inc.*, the Tennessee Supreme Court explained:

> Other writings, or matters contained therein, which are referred to in a written contract may be regarded as incorporated by reference as a part of the contract and therefore, may be properly considered in the construction of the contract. Where a written contract refers to another instrument and makes the terms and conditions of such other instrument a part of it, the two will be construed together as the agreement of the parties. Construing contemporaneous instruments together means simply that if there are any provisions in one instrument limiting, explaining, or otherwise affecting the provisions of another, they will be given effect as between the parties themselves and all persons charged with notice so that the intent of the parties may be carried out and the whole agreement actually made may be effectuated.

503 S.W.2d 180, 183 (Tenn. 1973) (quoting 17 Am. Jur. 2d, Contracts, §§ 263–65)).

This means that, when an agreement incorporates a document by reference, the document "must be considered as part of the agreement of the parties." *Lasco Inc. v. Inman Constr. Corp.*, 467 S.W.3d 467, 473 (Tenn. Ct. App. 2015). For example, in *Staubach Retail Services-Southeast, LLC*, a lease "expressly incorporated" a brokerage agreement. 160 S.W.3d at 524. As a result, "the language of the brokerage agreement . . . became a part of the lease," and the parties that signed the lease "accepted the terms of the brokerage agreement." *Id.* at 525. Similarly, here the language of the Loan Agreement became part of the Guaranty. And in signing the Guaranty, Defendant accepted the terms in the Loan Agreement—including its arbitration provision. Likewise, when Plaintiff purchased the rights to collect the loan amounts, it accepted the terms of the Loan Agreement, the Guaranty and other related Loan Documents.

Besides, the Court is not convinced that the Loan Agreement's reference to the "parties hereto" means only Copia and Pinnacle. The other related documents suggest the contrary. "Parties" is not a defined term in the Loan Agreement. (*See* ECF No. 1-2 at PageID 13–16.) What is more, the Loan Agreement contemplates the existence of a guarantor. And the Loan Agreement, considered with the Guaranty and other Loan Documents, allows for someone other than Pinnacle and Copia to be a party to the transaction.[6] In fact, the Loan Agreement defines "Guarantor" as "any Person or Persons from time to time executing a guaranty agreement in connection with the Loans." (*Id.* at PageID 15.) Plus, a Guaranty Agreement is a condition precedent of the loan,[7] and the Loan Agreement affirmatively requires that the Guarantor take certain actions. (*See id.* at PageID 18.) For example, the Guarantor must provide the Bank with a personal financial statement each year and his personal tax return. (*Id.* at PageID 23.)

With all this in mind, the Court finds that the arbitration clause's reference to "the parties hereto" is not limited to Copia and Pinnacle. And as incorporated, the Loan Agreement's references to the "parties" also includes the Defendant. Defendant is therefore a "party" to the Loan Agreement's arbitration clause. The Court therefore finds that Defendant makes "a prima facie showing of the [arbitration] agreement's existence." *Great Earth Cos., Inc.*, 288 F.3d at 889. So it is now up to Plaintiff to show a genuine issue of material fact about the validity of the agreement.

---

[6] The Guaranty states that "[t]his Guaranty is assignable by Bank, and any assignment hereof or any transfer or assignment of any instrument evidence or securing the Indebtedness will operate to vest in such assignee all rights and powers of Bank under this Guaranty." (ECF No. 1-5 at PageID 55.) Similarly, the Promissory Note says that Copia promises to pay Pinnacle "and any subsequent holder[s]" of the promissory note. (ECF No. 1-1 at PageID 7.) So all in all, the Loan Documents contemplate parties other than Copia and Pinnacle.

[7] The Promissory Note and Security Agreement were also conditions precedent to the loan. (*See* ECF No. 1-2 at PageID 17.)

### iii. The Guaranty's Forum-Selection Clause Does Not Prevent Application of the Arbitration Clause

Plaintiff argues that there is an issue of material fact because the Guaranty's forum-selection clause shows the parties' intent to resolve disputes about the Guaranty in court, not in arbitration.[8] (ECF No. 13 at PageID 107.) The venue provision states that the "Guarantor consents and submits to the jurisdiction and venue of any judicial court in Shelby County, Tennessee with respect to the enforcement of this Guaranty and agrees that service of process by any judicial officer or by register or certified mail will establish personal jurisdiction over Guarantor."[9] (ECF No. 1-5 at PageID 55.) Defendant responds that, because the provision does not give courts *exclusive* venue of claims under the Guaranty, it does not prevent arbitration. (ECF No. 14 at PageID 116.)

This Court finds that this provision means that, if the dispute is resolved in court, Defendant would not object to jurisdiction in a court in Shelby County, Tennessee. But it does not mean that Tennessee courts are the exclusive venue for addressing claims from the Guaranty. Plus, "[w]hen faced with a broad arbitration clause, such as one covering *any* dispute arising out of an agreement, a court should follow the presumption of arbitration and resolve doubts in favor of arbitration." *Simon*, 398 F.3d at 775. "Indeed, in such a case, 'only an express provision excluding a specific dispute, or the most forceful evidence of a purpose to exclude the claim from arbitration, will remove the dispute from consideration by the arbitrators.'" *Id.* (quoting

---

[8] This is another issue with little case law on point. In fact, Plaintiff does not cite any case law to support this argument. (*See* ECF No. 13 at PageID 107–08.)

[9] Defendant moves to dismiss and compel arbitration under Federal Rule of Civil Procedure 12(b)(3) for improper venue. This challenge to venue is improper under the Guaranty. That said, Defendant also moves to dismiss under Rules 12(b)(1), 12(b)(6), or 56. (ECF No. 8 at PageID 74.) And, in the alternative, he moves to compel arbitration and stay. The Court considers this motion as a motion to compel arbitration and stay, not as a motion to dismiss for improper venue. So the Guaranty's venue provision does not affect the Court's analysis here.

*Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004)); *see also Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 450 (6th Cir. 2005).

The arbitration clause here requires the parties to arbitrate "[a]ny controversy or claim between or among the parties hereto including but not limited to those arising out of or related to this, instrument, agreement or document or any related instruments, agreements or documents . . . ." (ECF No. 1-2 at PageID 31.)  This is a broad arbitration provision that applies to "any controversy or claim" arising out of the Loan Agreement or any related document.  And as discussed, the Loan Agreement contemplated the Guaranty Agreement, and vice versa.  (*See* ECF Nos. 1-2 at PageID 15; 1-5 at PageID 54.)  In fact, the parties entered the two documents at the same time.  (*See* ECF Nos. 1 at PageID 2; 1-2 at PageID 37; 1-5 at PageID 53.)  As a result, the venue provision in the Guaranty fails to show that the parties' intended not to arbitrate.  Instead, it says that if the parties litigate a dispute in court, Defendant agrees to the jurisdiction of courts in Shelby County, Tennessee.

And "mandatory arbitration clauses and forum-selection clauses are *not* mutually exclusive, but rather are complementary."  *Branch v. Mays*, 265 F. Supp. 3d 801, 805 (E.D. Tenn. 2017) (emphasis in original).  In one district court case, the court considered a similar venue provision along with an arbitration clause.  *Spartech CMD, LLC v. Int'l Auto. Components Grp. N. Am., Inc.*, No. 08-13234, 2009 WL 440905, at *8 (E.D. Mich. Feb. 23, 2009).  It found that "[t]here is no requirement that disputes be settled in litigation; [the provision] only says that if Plaintiff files suit in Pennsylvania state or federal court, Defendant may not contest personal jurisdiction or venue."  *Id.*; *see Bank Julius Baer & Co. v. Waxfield Ltd.*, 424 F.3d 278, 282 (2d Cir. 2005) (finding that forum selection clause did not prevent application of arbitration clause where forum selection clause "makes no reference to arbitration"), abrogated on other grounds

by *Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391 (2d Cir. 2015). Likewise, the provision in the Guaranty says that Defendant may not contest personal jurisdiction or venue only—not that all disputes must be resolved in court.

For these reasons, the Court finds that the venue provision does not show the parties' intent not to arbitrate. For this reason, the bottom line is that Plaintiff fails to "show a genuine issue of material fact as to the validity of the agreement to arbitrate." *Great Earth Cos., Inc.*, 288 F.3d at 889. And so, the Court now considers whether Plaintiff's claims fall within the arbitration clause's scope.

      **B.**      **Plaintiff's Claims Fall Within the Scope of the Arbitration Clause**

Plaintiff's claims fall under the arbitration clause. A party cannot force another to arbitrate claims that they did not agree to arbitrate. *Teamsters Loc. Union No. 783 v. Anheuser-Busch, Inc.*, 626 F.3d 256, 264 (6th Cir. 2010). Even so, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 (1983).

The arbitration clause requires that the parties arbitrate "[a]ny controversy or claim between or among the parties hereto including but not limited to those arising out of or related to this, instrument, agreement or document or any related instruments, agreements or documents . . . ." (ECF No. 1-2 at PageID 31.) Defendant argues that, "[w]ithout question, Plaintiff's claims arise under and relate to the Loan" because it sues for breach of the Loan Agreement and Guaranty. (ECF 8-1 at PageID 84.) The Court agrees. As incorporated in the Guaranty, the arbitration clause applies to "any controversy or claim" arising for the Loan Agreement or any

17

related document. (*Id.*) And Plaintiff's claim that Defendant is liable for the amount "that is due under the Line of Credit Promissory Note and Loan Documents pursuant to the Unlimited Guaranty Agreement" falls within that broad arbitration clause. (*See* ECF No. 1 at PageID 4.)

For these reasons, the Court finds that the parties entered an arbitration agreement and that Plaintiff's claims are part of that arbitration clause. The Court now considers whether it should dismiss or stay Plaintiff's claims.

### III.   Staying the Case Pending Arbitration

Defendant argues that the Court should dismiss Plaintiff's claims or, in the alternative, stay the case pending arbitration. (ECF No. 8-1 at PageID 85.) Under Section 3 of the FAA, if a court finds that an arbitration agreement is enforceable, the court should stay the action pending resolution of the arbitration. 9 U.S.C. § 3. And, "a litigant who was not party to the relevant arbitration agreement may invoke § 3 if the relevant state contract law allows him to enforce the agreement." *Arthur Andersen LLP*, 556 U.S. at 632.

There is a circuit split about whether courts may dismiss (instead of stay) an action when the court finds the claims are arbitrable. *Aqua-Chem, Inc. v. Bariven, S.A.*, No. 3:16-cv-553, 2018 WL 4870603, at *3 (E.D. Tenn. Mar. 16, 2018). In *Arthur Andersen, LLP*, the Supreme Court found that a nonparty to an arbitration agreement may invoke § 3 if state contract law allows him to enforce the arbitration agreement. 556 U.S. at 632. The Court found "that no federal law bars the State from allowing petitioners to enforce the arbitration agreement against respondents and that *§ 3 would require a stay in this case if it did.*" *Id.* (emphasis added).

As explained above, Defendant here properly invoked § 3 of the FAA to enforce the arbitration provision under Tennessee contract law. But he does so as a nonsignatory to the Loan Agreement. As a result, the Court follows the Supreme Court's guidance in *Arthur Andersen,*

18

*LLP* and finds that a stay under § 3 is more appropriate than dismissal here. The Court therefore **STAYS** the case pending arbitration.

## **CONCLUSION**

The Court **GRANTS** Defendant's motion to compel arbitration. The Court also **STAYS** the case pending that arbitration. The Court however **DENIES** the Motion to Dismiss.

**SO ORDERED**, this 14th day of January, 2021.

                                             s/Thomas L. Parker
                                             THOMAS L. PARKER
                                             UNITED STATES DISTRICT JUDGE